IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH JOHNSON, JR., | No. C 05-02064 SI |
| Petitioner, | **ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |
| v. | |
| MELVIN HUNTER, Warden, | |
| Respondent. | |

Now before the Court is Joseph Johnson, Jr.'s petition for writ of habeas corpus concerning his commitment to Atascadero State Hospital. Having carefully considered the papers submitted, and for good cause appearing, the Court hereby DENIES the petition.

**BACKGROUND**

Under the Sexually Violent Predator Act ("SVPA"), California Welfare & Institutions Code § 6600, *et seq.*, the State of California can commit a person for a period of two years if he is found to be a sexually violent predator ("SVP"). Before the state may commit a person under the SVPA, however, the statute requires that the state fulfill a number of procedural requirements. First, the person must be "evaluated by two practicing psychiatrists or psychologists," both of whom must concur "that the person has a diagnosed mental disorder so that he or she is likely to engage in acts of sexual violence without appropriate treatment and custody." Cal. Welf. & Inst. Code § 6601(d). If both evaluators concur, then the state may petition to have the person committed. *Id.* The person may be committed only if a jury finds, "beyond a reasonable doubt, the person is a sexually violent predator." Cal. Welf. & Inst. Code § 6604.

On May 24, 2000, a jury found that petitioner was an SVP. He was thereafter committed to Atascadero State Hospital for a period of two years. In 2005, he filed the instant habeas petition, arguing that his commitment was unconstitutional.

**1.     Commitment Proceedings**

Petitioner's commitment was based upon a long criminal history of attempted and completed sexual assaults. The California Court of Appeal summarized petitioner's criminal history as follows:

> On October 2, 1971, defendant broke into the home of a 46-year-old woman at 4:00 a.m., climbed into bed with her while she was sleeping, put one hand over her mouth and the other hand on her hands, and told her, "shut up, you won't get hurt." The woman woke and started screaming. Defendant attempted to pull the woman's pants down, but she was able to get out of bed and run out. Defendant then ran out of the house.
>
> On October 26, 1971, a 19-year-old woman woke at 1:15 a.m. to find defendant at the end of her bed. Defendant told the woman, "be quiet and you won't get hurt." He got into bed with the woman and tried to climb on top of her. She began to fight and scream. He placed his hand over her mouth and then moved his hand to her throat. When she screamed again, he got off the bed and ran out.
>
> On October 31, 1971, another woman was awakened by a noise at 4:35 a.m. She saw defendant turn off her lamp and close her bedroom door. She sat up in bed but he pushed her down and told her not to make any noise. She said that she was afraid and kept trying to get defendant to let her get something. He let her get a towel. When he finally let her out of her room, she ran out with the towel, screaming.
>
> In May 1972, after he had escaped from custody, defendant was charged with rape in Denmark and spent nine months in custody there.
>
> In November 1980, a woman heard defendant coming in through her front door in the middle of the night. She was able to shut him out. She called the police when she heard noise downstairs shortly thereafter. Downstairs, a 24-year-old woman was awakened from sleep in her own bed at about 3:45 a.m. Defendant was on top of her. He put her housecoat over her head and assaulted her. She attempted to resist but he kept hitting her and trying to push his fingers into her eyes. In the process they rolled onto the floor, at which time he turned her on her stomach and raped her from behind. The victim suffered swelling, multiple areas of bruising, and lacerations on her lips.
>
> Also in November 1980, a 32-year-old woman woke at some unknown time with defendant's hand over her face. She tried to scream, and was advised she wouldn't be harmed if she didn't. She tried to resist and defendant struck her. He also stuck his finger into her mouth, causing a deep gash under her tongue. He raped her, then left through the front door. In addition to her other injuries, this victim suffered bruising on her arm.

Resp. Ans., Exh. F, at 3-4.

At petitioner's commitment trial, two psychologists testified about their evaluation of petitioner: Dr. Charlene Steen and Dr. Barrie Glen. The California Court of Appeal summarized their testimony as follows:

> Based on defendant's history, prior evaluations and diagnoses, and her psychological testing and interviews of him, Dr. Steen diagnosed defendant as having paraphilia not otherwise specified. Someone with paraphilia has recurrent urges, fantasies, or behaviors that have to do with unconsented sex or humiliating a partner. . . . Dr. Steen also diagnosed defendant with polysubstance dependence and an antisocial personality disorder with some compulsive and avoidant features. . . .
>
> In Dr. Steen's opinion, defendant currently has a diagnosed mental disorder that predisposes him to the commission of criminal sexual acts. It is her opinion that defendant is likely to sexually violently reoffend as a result of his mental disorders. A person usually commits similar offenses to those he or she committed before if that person has a pattern of offending, and defendant has been consistent in his pattern of offending.
>
> . . .
>
> Dr. Steen indicated that when someone is not treated for paraphilia, offenses can become more serious or more frequent or both. With treatment, paraphilia can be controlled or contained.
>
> . . .
>
> Dr. Barrie Glen, a psychologist who contracts with the state to perform SVP evaluations, also evaluated defendant. . . . She diagnosed defendant with three disorders: paraphilia not otherwise specified, polysubstance dependence in remission, and antisocial personality disorder. In her opinion, defendant currently has diagnosed mental disorders within the meaning of SVPA and is likely to engage in sexually violent criminal behavior in the future as a result of his disorders.
>
> . . .
>
> In Dr. Glen's opinion, defendant needs treatment. Over the long term without treatment, the chances are that defendant will not be able to resist the urge to commit another rape.

Resp. Ans., Exh. F, at 4-5, 9-10.

Defendant also testified at his commitment trial. The California Court of Appeal described his testimony as follows:

> Defendant was called to testify for the People. He disagreed with Dr. Steen's diagnosis that he suffers from an antisocial personality disorder. He lived a criminal lifestyle, but it was a choice he made and he does not see it as a disorder. . . . He is sorry for the sexual assaults; it was wrong and he knows that it will never happen again.
>
> . . .

3

> Defendant testified that he did not recall being charged with breaking into a house and attempting a rape on October 26, 1971. Nor did he recall another similar event on October 31, 1971. He also indicated that he did not recall going through any court proceedings relating to these incidents. He was arrested for the 1971 offenses and was in custody when he escaped in November 1971 and went to Denmark using a false passport. Prostitution is legal in Denmark and he engaged in pimping and prostitution there with three women. He was arrested in May 1972 for rape and for entering the country on a false passport. He spent eight or nine months in custody, but was only found guilty of the passport offense. After being released he got his legitimate passport and came back to the United States. He was only back a few weeks when he was arrested in March 1973 for the earlier charges and the escape.

Resp. Ans., Exh. F, at 7-11.

### 2. Procedural History

In 1982, petitioner was convicted of rape and sentenced to 33 years in prison. Resp. Ans., Exh. F, at 9. In May 1999, shortly before he was set to be paroled, the State of California filed a petition to commit petitioner as an SVP. *Id.* at 2. The California Court of Appeal summarized the facts of the case as follows:

> On May 11, 1999, the People filed a petition to commit defendant as an SVP. The petition alleged that defendant was in the custody of the Department of Corrections with a scheduled release date of May 23, 1999. Attached to the petition was a declaration by an assistant district attorney. The declaration alleged that defendant qualified for commitment under the SVPA because he had been convicted of sexually violent offenses against two or more victims and because a review of the evaluations of defendant by two practicing mental health professionals indicated that defendant has a current mental disorder such that he was likely to reoffend by committing another sexually violent offense. Four mental health evaluations were attached to the petition.
>
> Defendant filed a demurrer to the petition on June 21, 1999, alleging that the petition failed to state facts necessary to establish jurisdiction because it failed to have attached to it a required affidavit asserting that two concurrent mental health evaluators concluded that defendant has a diagnosed mental disorder and he is likely to reoffend. The trial court overruled the demurrer at a hearing that same day, and immediately began the probable cause hearing.

Resp. Ans., Exh. F, at 2.

Petitioner's demurrer contested the validity of respondent's commitment petition, alleging that the two mental health evaluators required by § 6601 had initially disagreed on categorizing him as an SVP. In fact, petitioner had been evaluated by two pairs of mental health professionals. The first pair

4

of evaluators, Dr. Glen and Dr. Schiff-Gennis, did not initially concur that the petitioner was an SVP. Pursuant to § 6601(e) of the SVPA, the Director of Mental Health then assigned another pair of evaluators to the petitioner, Dr. Tucker and Dr. Steen.[1] The second pair also ultimately disagreed as to whether petitioner was an SVP. Before they reached their conclusions, however, but after they began interviewing petitioner, Dr. Schiff-Gennis from the first evaluation pair changed her opinion and concluded that petitioner was in fact an SVP.[2] Based on Dr. Schiff-Gennis' change of opinion, the People filed their petition to commit petitioner according to the SVPA. Resp. Ans., Exh. A.

On May 24, 2000, a jury found petitioner to be an SVP, and the trial court committed him to Atascadero State Hospital for a period of two years. Resp. Ans., Exh. F, at 11. Although the record is not entirely clear, it appears that petitioner remains in state custody because he has been recommitted pursuant to California Welfare & Institutions Code § 6605.

Petitioner appealed his commitment, which was affirmed by the California Court of Appeal. Resp. Ans., at 2. His petition for review by the California Supreme Court was summarily denied on December 12, 2001. *Id.* On August 20, 2002, petitioner filed a habeas petition in the California Supreme Court. *Id.* That petition was denied on December 11, 2002. *Id.* The parties concede petitioner has exhausted his state judicial remedies with respect to the claims presented in the instant petition. *See* 28 U.S.C. § 2254(b), (c).

Petitioner filed the instant habeas petition under 28 U.S.C. § 2254 on May 19, 2005. On January 26, 2006, this Court issued an order denying respondent's motion to dismiss. California answered the petition on March 24, 2006. Petitioner filed his traverse on May 23, 2006. Having considered these

---

[1] According to § 6601(e) of the SVPA, "the person shall be evaluated by two practicing psychiatrists or psychologists . . . designated by the Director of Mental Health. If both evaluators concur that the person has a diagnosed mental disorder so that he or she is likely to engage in acts of sexual violence without appropriate treatment and custody, the Director of Mental Health shall forward a request for a petition for commitment. . . ." If the two evaluators do not concur, "the Director of Mental Health shall arrange for further examination of the person by two independent professionals. . . ."

[2] The record indicates the second pair of doctors interviewed petitioner on April 26, 1999, and April 27, 1999. Dr. Schiff-Gennis informed the Department of Health that she changed her classification of petitioner on April 27, 1999. The second pair of doctors issued their reports on petitioner on May 1, 1999, and May 10, 1999. Resp. Ans., Exh. M, at RT 5-6.

5

1  papers, the Court DENIES the habeas petition.

## STANDARD OF REVIEW

This Court may entertain a petition for writ of habeas corpus on "behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413.

## DISCUSSION

The sole basis for petitioner's habeas petition is his contention that his federal due process rights were violated when the State of California failed to follow the commitment procedures set forth in the SVPA. Specifically, petitioner contends that he was never properly evaluated by a team of medical health professionals as required by § 6601(c).

Petitioner's argument is based on *Hicks v. Oklahoma,* 447 U.S. 343 (1980), in which the Supreme Court found that a criminal defendant's federal due process rights had been violated by the state court's failure to follow state procedural law. The defendant in *Hicks* was convicted in Oklahoma

6

of distributing heroin and was sentenced to a mandatory term of 40-years in prison. *Id.* at 345. While his appeal was pending, the statute under which the defendant was sentenced was found to be unconstitutional. *Id.* Rather than setting aside the defendant's sentence, the appellate court affirmed his sentence, finding that he was not prejudiced because the 40-year term "was within the range of punishment that could have been imposed in any event." *Id.* The Supreme Court held that this was error; Oklahoma state law gave criminal defendants a right to have their punishment fixed by a jury, and that law gave the defendant a procedural right protected by the federal due process clause. *Id.* at 346 ("The defendant in such a case has a substantial and legitimate expectation that he will be deprived of his liberty only to the extent determined by the jury in the exercise of its statutory discretion.").

Petitioner argues that, as in *Hicks*, he had a federally protected liberty interest in the commitment procedures outlined in the SVPA. *See Campbell v. Blodgett,* 997 F.2d 512, 522 (9th Cir. 1992) ("*Hicks* recognized that state laws which guarantee a criminal defendant procedural rights at sentencing, even if not themselves constitutionally required, may give rise to liberty interests protected against arbitrary deprivation by the Fourteenth Amendment's Due Process Clause."). He contends that the state violated that interest when it failed to follow the SVPA's procedural requirements. Respondent contends that petitioner may not raise this basis for his habeas petition because it was procedurally defaulted. As to the merits, respondent argues that the procedures followed by the trial court were fully consistent with California law and the federal Constitution. The Court finds that petitioner's claim was not procedurally defaulted, but that it fails on the merits.

### 1. Procedural Default

A federal court may not review a habeas corpus petition if the state court's decision was based on an independent and adequate state procedural bar. *Coleman v. Thompson*, 501 U.S. 722, 731 (1991). When a state prisoner defaults his federal claims in state court in accordance with an independent and adequate state procedural rule, "federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law,

7

or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Id.* at 750. However, "[t]he mere existence of a basis for a state procedural bar does not deprive this Court of jurisdiction; the state court must actually have relied on the procedural bar as an independent basis for its disposition of the case." *Caldwell v. Mississippi* 472 U.S. 320, 327 (1985).

Respondent contends that petitioner's current claim is procedurally defaulted based on *People v. Pompa-Ortiz*, 27 Cal.3d 519 (1980). *Pompa-Ortiz* involved a defendant who, after being convicted of rape, moved to set aside his conviction on the ground that he had been denied a public preliminary hearing. *Id.* at 522. The California Supreme Court agreed that the defendant had been denied a substantial right, but found that the defendant had not properly raised the challenge to his preliminary hearing. *Id.* Instead of waiting until after his conviction had become final, the court held, the defendant should have challenged his preliminary hearing before trial:

> [I]rregularities in the preliminary examination procedures which are not jurisdictional in the fundamental sense shall be reviewed under the appropriate standard of prejudicial error and shall require reversal only if defendant can show that he was deprived of a fair trial or otherwise suffered prejudice as a result of the error at the preliminary examination. The right to relief without any showing of prejudice will be limited to pretrial challenges of irregularities. At that time, by application for extraordinary writ, the matter can be expeditiously returned to the magistrate for proceedings free of the charged defects.

*Id.* at 529. Because the defendant in *Pompa-Ortiz* had waited until after trial to raise a challenge to his preliminary hearing, the appellate court's review was limited to whether the defendant had been prejudiced. *Id.*

As in *Pompa-Ortiz*, petitioner in this case failed to raise before his trial a challenge to the pretrial commitment procedures the state used. The California Court of Appeal recognized this, and reviewed petitioner's challenge to the pretrial commitment procedures only for prejudice. It found that there was no prejudice because petitioner "was found to be an SVP, beyond a reasonable doubt, after a trial in which two doctors testified, and in which he was able to cross-examine the prosecution's witnesses and call his own witnesses." Resp. Exh. F at 22. Because the California appellate court's review was so limited, respondent argues that petitioner has procedurally defaulted on his argument.

Respondent's argument misses the mark. Petitioner does not – and cannot – base his federal

8

1 habeas petition on the argument that his conviction was illegal under state law. Rather, petitioner argues
2 that his federal due process rights were violated by the state's failure to follow its own commitment
3 procedures. While the two arguments overlap to a large degree, petitioner's due process argument is
4 a distinct question from his argument that his commitment was illegal under state law. Further,
5 petitioner's appellate brief in state court reveals that he raised his due process argument, but that the
6 appellate court failed to address it. *See* Resp. Br., Exh. C at 7. Because the appellate court did not
7 address petitioner's federal claim, it cannot be said to have relied on a procedural bar in denying his
8 appeal. Accordingly, the Court finds that petitioner adequately raised his due process argument to avoid
9 a procedural bar.

**2.   Due Process**

Petitioner contends that his federal due process rights were violated when the People filed a petition for his commitment under the SVPA. He argues the that state did not follow SVPA procedure when it filed a petition for commitment after allowing a doctor to change her diagnosis of him as an SVP. Petitioner contends that once the initial team failed to concur, a new team was appointed and the first team's opinion could no longer be used or changed.

When a state fails to abide by its own statutory commands, it may implicate a constitutionally protected liberty interest. *Fetterly v. Paskett,* 997 F.2d 1295, 1300 (9th Cir. 1993) ("[T]he failure of a state to abide by its own statutory commands may implicate a liberty interest protected by the Fourteenth Amendment against arbitrary deprivation by a state."); *Campbell v. Blodgett,* 997 F.2d 512, 522 (9th Cir. 1992) (petitioner had "a liberty interest in having the Washington Supreme Court review and make particular findings before affirming his death sentence"); *Walker v. Deeds,* 50 F.3d 670, 673 (9th Cir. 1995) ("Nevada's law requiring a court to review and make particularized findings that it is 'just and proper' for a defendant to be adjudged a habitual offender also creates a constitutionally protected liberty interest in a sentencing procedure."). Where, however, the state court's action is based upon an interpretation of the governing state statute, federal habeas review is generally unavailable. *See Hubbart*

9

*v. Knapp,* 379 F.3d 773, 779-80 (9th Cir. 2004) ("We may not second-guess the California appellate court's construction of its own state law unless it appears that its interpretation is an obvious subterfuge to evade consideration of a federal issue.") (internal quotation marks omitted); *see also Campbell v. Blodgett*, 997 F.2d 512, 522 (9th Cir. 1992).

Here, petitioner has not shown that the state trial court failed to abide by California's statutory commands. Rather, the trial court considered petitioner's contention that a team of psychiatrists had not concurred that he was "likely to engage in acts of sexual violence without appropriate treatment and custody," Cal. Welf. & Inst. Code § 6601, and found that the state had complied with the statute. *See* Resp. Br., Exh. M. Because the trial court's ruling was based upon an interpretation of state law, it cannot provide the basis for a cognizable habeas claim. Accordingly, the habeas petition is DENIED.

## CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby DENIES the petition for writ of habeas corpus.

**IT IS SO ORDERED.**

Dated: August 30, 2006

SUSAN ILLSTON
United States District Judge